IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

FRANCISCO VALDES, ET AL.,           §
                                    §
            Plaintiffs,             §       CIVIL ACTION NO. 4:19-CV-00471-CAN
v.                                  §
                                    §
GHP ASSET COMPANY LLC,              §
                                    §
            Defendant.              §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant GHP Asset Company LLC's ("Defendant") Second

Motion for Summary Judgment ("Motion for Summary Judgment") [Dkt. 23].  After reviewing

the Motion for Summary Judgment, Plaintiffs' Response [Dkt. 25], Defendant's Reply [Dkt. 27],

and all other relevant filings, the Court finds that Defendant's Motion for Summary Judgment

[Dkt. 23] should be **GRANTED**, as set forth herein.

## BACKGROUND

Plaintiffs Francisco and Sharon Valdes ("Plaintiffs") commenced the instant suit in state

court on June 12, 2019, seeking to set aside a foreclosure and stop eviction from their homestead,

the real property located at 220 Overland Drive, Lowry Crossing, Texas 75069 (the "Property")

[Dkt. 2].  Plaintiffs allege Defendant wrongfully foreclosed on the Property after acquiring a loan

executed by Plaintiffs for construction of a swimming pool on the Property [Dkt. 2].  The

underlying facts of the case are largely undisputed.

The Parties agree that on January 12, 2006, Plaintiffs entered into a contract ("Construction

Contract") with Wave Tec Pools, Inc. ("Wave Tec") for the construction of a new swimming pool

on the Property [Dkts. 19 at 2; 23-5].  To pay for the construction by Wave Tec, Plaintiffs obtained

a fifteen-year loan (the "Loan") in the amount of $34,588.50 from Defendant's predecessor-in-

interest, Superior Funding, Inc. ("Superior Funding") [Dkts. 19 at 2; 23-2; 23-3].  The Loan was secured by a security interest in the Property [Dkts. 23-2; 23-3].  The terms of the Loan authorized the lender to invoke the power of sale if Plaintiffs defaulted.

Wave Tec began construction on the Property in early 2006, but Plaintiff alleges it never completed the pool [Dkt. 25-1 at 2].  Plaintiffs contend the completed construction was unable to pass inspection [Dkt. 25-1 at 2].  Thereafter, Wave Tec went out of business, and in May of 2006, Plaintiffs hired an attorney to send letters and a settlement demand to Wave Tec, related to the incomplete, unusable pool [Dkt. 25-1 at 2].  Plaintiffs aver they continued to pay on the Loan until 2011 [Dkt. 25-1 at 3].  Defendants contend that at present Plaintiffs are in default.

### Bankruptcy Proceedings

In 2007, Plaintiffs filed two bankruptcy proceedings in the Eastern District of Texas in consecutive months.  The first, which was filed in October 2007, was dismissed for failure to pay the filing fee [Dkts. 23-9; 23-10].  The second, which was filed in November 2007, culminated in a "discharge of debtor" in February 2008 [Dkts. 23-11; 23-12].  Of note, Superior Funding and FH Partners, LLC are listed as a creditors [Dkts. 23-9 at 21; 23-11 at 17].  Neither of the petitions list a claim or potential claim against Wave Tec or Superior Funding [Dkts. 23-9 at 12; 23-11 at 8], and each indicate Plaintiffs' intention to reaffirm the debt owed to Superior Funding [Dkts. 23-9 at 50; 23-11 at 46].

### Foreclosure of the Loan

Defendant acquired the Loan from FH Partners, LLC in September 2017, who had acquired its interest from Superior Funding in December 2006 [Dkt. 23-4 at 1, 4].  Plaintiffs allege that in 2017, after Defendant purchased the Loan, it began to send notices to accelerate [Dkt. 25 at 2].  Relevant here, on February 5, 2019, Defendant sent Plaintiffs a Notice of Default and Intent to

Accelerate via certified mail, warning Plaintiffs the Loan would be accelerated if the default in the amount of $52,485.60 was not cured within thirty days [Dkt. 23-6].   On March 8, 2019, after Plaintiffs failed to cure the default, Defendant sent Plaintiffs a Notice of Acceleration and Trustee's Sale via certified mail, which scheduled the sale for April 2, 2019 [Dkt. 23-7].   Defendant purchased the Property at the scheduled foreclosure sale and subsequently recorded the Substitute Trustee's Deed in the Collin County property records as document number 20190405000361920 on April 5, 2019 [Dkt. 23-8].

*Instant Lawsuit*

On June 12, 2019, Plaintiffs filed the instant suit in the 219th Judicial District Court in Collin County, Texas [Dkts. 1; 2].   Defendant then removed this suit to the Eastern District of Texas on June 28, 2019 [Dkt. 1].   Plaintiffs filed an Amended Complaint on August 7, 2019 [Dkt. 5] and a [Second] Amended Complaint on March 2, 2020 [Dkt. 19].[1]   The Second Amended Complaint, which is the live pleading, asserts claims for breach of contract and negligence per se, and a request for declaratory judgment (referencing quiet title) [Dkt. 19 at 4].[2]   Plaintiffs specifically allege: (1) Defendant's foreclosure sale of the Property violated the notice provision of the Texas Property Code; (2) Plaintiffs do not owe any money under the terms of the Construction Contract; and (3) the Loan, when originated, did not conform with the Texas Constitution and is therefore unenforceable [Dkt. 19 at 3-4].   Plaintiffs seek damages, attorney's fees, and a declaratory judgment that the Loan is "null and void" [Dkt. 19 at 4-5].

---

[1] The live pleading is titled "Plaintiffs' Third Amended Complaint" but is in fact the Second Amended Complaint. The Court refers to this pleading as the Second Amended Complaint herein.

[2] Although Plaintiffs' Second Amended Complaint asserts a claim for negligence per se [Dkt. 19 at 4], Plaintiffs' Response to Defendant's Motion for Summary Judgment states, "Plaintiffs also hereby abandon their negligence per se claim" [Dkt. 25 at 2].

*Motion for Summary Judgment*

On April 7, 2020, Defendant filed the instant Motion for Summary Judgment as to all claims asserted in the Second Amended Complaint [Dkt. 23]. Defendant argues it is entitled to judgment as a matter of law for numerous reasons, including that: (1) Plaintiffs lack standing; (2) Plaintiffs' claims are barred by judicial estoppel; (3) the statute of limitations has not run on Defendant's right to conduct a foreclosure sale; (4) Defendant did not waive its right under the Deed of Trust to foreclose; (5) the Loan does not violate the Texas Constitution or Texas Property Code; (6) Plaintiffs were sent all notices required by the Texas Property Code; (7) Plaintiffs' breach of contract claim fails as a matter of law; and (8) Plaintiffs' request for declaratory judgment should be denied because their breach of contract claim fails [Dkt. 23 at 8-19]. Plaintiffs filed a Response on April 28, 2020 [Dkt. 25]; Defendant filed a Reply on May 5, 2020 [Dkt. 27].

In their Response, Plaintiffs acknowledge they have abandoned any wrongful foreclosure claim, any negligence per se claim, and any waiver/statute of limitations defense [Dkt. 25 at 2].[3] Because Plaintiff has abandoned these claims, summary judgment on them is proper. *See Rasco v. Potter*, No. H-05-0034, 2007 WL 9758165, at *2 (S.D. Tex. Jan. 4, 2007) (granting summary judgment in favor of the defendant on the claims the plaintiff abandoned), *aff'd*, 265 F. App'x 279 (5th Cir. 2008). The sole remaining claims for the Court's consideration herein are for breach of contract (and any corresponding arguments related to such claim) and declaratory judgment.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses, to help "secure the just, speedy and inexpensive determination of every action." *Nat'l*

---

[3] The statute of limitations defense is waived as Plaintiffs failed to address Defendant's waiver argument. *See Santos v. Coleman World Grp., LLC*, No. EP-16-CV-00195-DCG, 2017 WL 5474061, at *6 (W.D. Tex. Nov. 13, 2017) (granting the defendant's motion for summary judgment on an issue because the plaintiff failed to respond to the defendant's motion for summary judgment on that issue).

*Cas. Co. v. Kiva Const. & Eng'g, Inc.*, 496 F. App'x 446, 449 (5th Cir. 2012) (citing *Celotex Corp.* *v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). All inferences must be construed in the light most favorable to the nonmoving party. *See id.*; *Osprey Ship Mgmt. Inc. v. Foster*, 387 F. App'x 425, 429 (5th Cir. 2010). "[T]he substantive law will identify which facts are material. This means [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir. 2019) (citing *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019)) (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 653 (2019).

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191 (5th Cir. 2011). "[W]here the movant bears the burden of proof at trial, the movant 'must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.'" *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (citation omitted). However, if the movant does not bear the burden of proof at trial, the movant is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Gonzales v. ConocoPhillips Co.*, 806 F. App'x 289, 291 (5th Cir. 2020) (citing

*Celotex*, 477 U.S. at 323).   Once the movant has carried its burden, the nonmovant "must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307 (5th Cir. 2020).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Malbrough v. Stelly*, 814 F. App'x 798, 802 (5th Cir. 2020) (citing *Anderson*, 477 U.S. at 249-50).

## EVIDENCE PRESENTED

Defendant submits the following evidence in support of its Motion for Summary Judgment:

Exhibit A [Dkt. 23-1]: Affidavit of Sam Green, the Managing Member of GHP Asset Company, LLC, with exhibits A-1 through A-7 attached thereto;

Exhibit A-1 [Dkt. 23-2]: Note in the amount of $34,588.50 executed on January 12, 2006, by Plaintiffs;

Exhibit A-2 [Dkt. 23-3]: Deed of Trust dated January 12, 2006;

Exhibit A-3 [Dkt. 23-4]: Assignments of Deed of Trust:

Assignment of Deed of Trust from Superior Funding, Inc. to FH Partners, LLC with an effective date of December 8, 2006 [Dkt. 23-4 at 1-3];

Assignment of Deed of Trust from FH Partners, LLC to GHP Asset Company, LLC with an effective date of October 7, 2017 [Dkt. 23-4 at 4-6];

Exhibit A-4 [Dkt. 23-5]: Residential Construction Contract between Wave Tec Pools, Inc. and Plaintiffs, which was executed on January 12 and 17, 2006, in the amount of $35,237.00;

Exhibit A-5 [Dkt. 23-6]: Notice of Default and Intent to Accelerate dated February 5, 2019;

Exhibit A-6 [Dkt. 23-7]: Notice of Acceleration and Trustee's Sale dated March 8, 2019;

Exhibit A-7 [Dkt. 23-8]: Substitute Trustee's Deed dated April 2, 2019, and recorded with the County Clerk of Collin County, Texas, on April 5, 2019, at Document No. 20190405000361920;

Exhibit B [Dkt. 23-9]: Bankruptcy petition/schedules in the first Eastern District of Texas bankruptcy case, case no. 07-42517;

Exhibit C [Dkt. 23-10]: Dismissal Order of first Eastern District of Texas bankruptcy case, case no. 07-42517;

Exhibit D [Dkt. 23-11]: Bankruptcy petition/schedules in the second Eastern District of Texas bankruptcy case, case no. 07-42723; and

Exhibit E [Dkt. 23-12]: "Discharge of Debtor" Order in the second Eastern District of Texas bankruptcy case, case no. 07-42723.

In their Response, Plaintiffs rely on the exhibits attached to Defendant's Motion for Summary Judgment, as well as attach the following additional evidence [Dkt. 25 at 3]:[4]

Exhibit A [Dkt. 25-1]: Affidavit of Sharon Valdes dated April 27, 2020.

No objections have been made to either Parties' summary judgment evidence.  As such, all exhibits are properly before the Court.

## ANALYSIS

As previously stated, Defendant has asserted a multitude of arguments supporting its request for summary judgment, those pertinent to the remaining claims for breach of contract and declaratory judgment are:  (1) Plaintiffs lack standing; (2) Plaintiffs' claims are barred by judicial estoppel; (3) Defendant did not waive its right under the Deed of Trust to foreclose; (4) the Loan does not violate the Texas Constitution or Texas Property Code; (5) Plaintiffs were sent all notices required by the Texas Property Code; (6) Plaintiffs' breach of contract claim fails as a matter of law; and (7) Plaintiffs' request for declaratory judgment should be denied because their breach of contract claim fails [Dkt. 23 at 8-19].

---

[4] Plaintiffs also list an "Exhibit B: Affidavit of Francisco Valdes" and an "Exhibit C: Failed Inspection" but no such documents are attached to their Response [Dkt. 25 at 3].

*Standing*

Defendant first argues that Plaintiffs lack "standing to pursue any claims related to the prebankruptcy construction of the home or validity of the lien at origination" because they are not the real party in interest to prosecute their claim for breach of contract [Dkt. 23 at 8].  Specifically, Defendant asserts that claims which arose prior to Plaintiffs' 2007 bankruptcy belong to Plaintiffs' bankruptcy estate and that only the bankruptcy trustee could assert those claims [Dkt. 23 at 8]. Stated differently, Defendant argues that, even where, as here, the bankruptcy case has been closed, the bankruptcy trustee remains the proper party to prosecute claims on behalf of the estate. Plaintiffs respond that the claims they could have asserted against Wave Tec related to the construction of the swimming pool are not the same claims they are asserting in the instant case against Defendant, including those allegations stemming from the 2019 foreclosure [Dkt. 25 at 3].

Courts in the Fifth Circuit have long held that "[t]he bankruptcy trustee has exclusive standing to assert claims that belong to the bankruptcy estate." *Segner v. Sinclair Oil & Gas Co.*, No. 3-11-CV-03606-F, 2012 WL 12885055, at *4 (N.D. Tex. June 4, 2012) (citing *In re Educators Gr. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994)), *supplemented*, No. 3-11-CV-03606-F, 2012 WL 12884861 (N.D. Tex. Oct. 19, 2012), *order clarified*, No. 3-11-CV-03606-F, 2012 WL 12885056 (N.D. Tex. Nov. 9, 2012).  "If a cause of action is neither abandoned by the trustee nor administered in accordance with the bankruptcy code, it remains property of the bankruptcy estate, and the debtor has no standing to pursue it, even after his or her debts are discharged and the case is closed."  *Matthews v. Foulcard*, No. 6:18-CV-01527, 2020 WL 4044919, at *4 (W.D. La. June 30, 2020) (citing 11 U.S.C. § 554(d)), *report and recommendation adopted*, No. 6:18-CV-01527, 2020 WL 4043826 (W.D. La. July 17, 2020); *see also* 11 U.S.C. § 554(d) ("Unless the court orders otherwise, property of the estate [, including legal claims,] that is not abandoned under

this section and that is not administered in the case remains property of the estate.").  However, claims that are unknown or non-existent at the time of the bankruptcy proceeding cannot possibly become part of the estate or be entrusted to the bankruptcy trustee.  *Monson v. City of Detroit*, No. 18-10638, 2019 WL 1057306, at *8 (E.D. Mich. Mar. 6, 2019) ("[A] claim cannot fall within the purview of section 101(5)—and thus cannot be discharged as a pre-petition claim—unless that claim could have been contemplated by the parties prior to the bankruptcy proceedings.").

At least some of Plaintiff's allegations center on the 2019 foreclosure sale.  Because any claim about such sale could not have accrued until long after the dismissal of the bankruptcy proceedings, the Court determines it is proper to examine any breach of contract claim based upon or stemming from the sale on its merit.  *Bradley v. PNC Bank, N.A.*, No. 4:14CV37, 2014 WL 4829317, at *2 (E.D. Tex. Sept. 26, 2014) ("Although Defendant argues that all claims should be dismissed based on lack of standing, it appears to the Court that at least some of Plaintiff's allegations center on a September 3, 2013 foreclosure sale.  Because any claims about this sale could not have accrued until after the dismissal of the bankruptcy, Defendant's standing argument does not apply and the Court examines them on their merit.").[5]

### Judicial Estoppel

Defendant next argues that even if Plaintiffs have standing to assert these claims, the Court should nonetheless bar Plaintiffs' claims under the equitable doctrine of judicial estoppel, as Plaintiffs' claims are clearly inconsistent with their previous position to the bankruptcy court [Dkt. 23 at 9-10].  Plaintiffs counter that the Court should not apply judicial estoppel for two reasons: (1) "Plaintiffs had no awareness whatsoever of any claims they might have, aside from

---

[5] Given that the Court will proceed to discuss the merits of the arguments related to or centered on the 2019 foreclosure sale, for purposes of completeness the Court will address all remaining arguments raised by the Parties on the breach of contract claim.

bringing suit against Wave Tec for construction of the pool, and they did not believe this claim to be viable since Wave Tec had gone out of business" [Dkt. 25 at 4]; and (2) "Plaintiffs' claims were not ripe until Defendant foreclosed on their home" [Dkt. 25 at 5].

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (citing *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004)). "The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self-interest." *Id.* (internal citations omitted). "Judicial estoppel has three elements: (1) the party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013) (citing *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011)). To establish inadvertence— the third element—Plaintiffs "may prove either that [they] did not know of the inconsistent position or that [they] had no motive to conceal it from the court." *Id.* (quoting *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 601 (5th Cir. 2005)). Judicial estoppel is an equitable doctrine, and the decision of whether to invoke it is within the Court's discretion. *Id.* (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 204-05 (5th Cir. 1999)).

Although Plaintiffs do not specifically outline on which grounds the Court should deny Defendant's request for application of judicial estoppel, their Response seemingly addresses the first and third elements—that is, their prior position before the bankruptcy court was not inconsistent with their position now and that they did not act "inadvertently" in failing to list the claim [Dkt. 25 at 4-5]. Plaintiffs may establish "inadvertence" in this context if they show they: (1) "did not know of the inconsistent position"; or (2) "had no motive to conceal it from the court."

*In re Flugence*, 738 F.3d at 130 (quoting *Jethroe*, 412 F.3d at 601).[6]  "A debtor possesses the requisite motivation if concealing the claim allows the debtor to reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors."  *Allen v. C & H Distributors, L.L.C.*, 813 F.3d 566, 574 (quoting *In re Superior Crewboats, Inc.*, 374 F.3d 330, 336 (5th Cir. 2004)) (internal quotation marks omitted).  As the Fifth Circuit explained, "the relevant time frame for determining whether a motivation exists is at the time the debtor failed to meet his disclosure obligations[.]"  *Id.* (quoting *Love*, 677 F.3d at 262) (internal quotation marks and alterations omitted).[7]

> Plaintiffs' breach of contract claim in the Second Amended Complaint states
>
> Defendant has breached the contract in that it has exercised a remedy that is not permissible under the contract.  Plaintiffs do not owe any money under the terms of the contract, and the contract does not comply with Tex. Const. Art XVI, § 50(a)(5)(D), thereby protecting Plaintiffs' homestead from forced sale.

[Dkt. 19 at 4].  Plaintiffs clarify in their Response their position is that they do not owe any money to Defendant as a result of the partial lien clause in the Construction Contract, and thus Defendant had no contractual right to foreclose on their home [Dkt. 25 at 6].  In sum total, Plaintiffs' argument as to this point is as follows: "Defendant's predecessor in interest did not finish the pool because it did not pass inspection.  Finishing the pool would cost more than the contract price.  Therefore, there is no lien and Defendant had no contractual right to foreclose on Plaintiffs' home." [Dkt. 25

---

[6] "Whether a debtor's failure to disclose claims was inadvertent presents a question of fact."  *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (citing *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275 (11th Cir. 2010)); *see also In re Wakefield*, 293 B.R. 372, 381 (N.D. Tex. 2003) ("Lack of motive is one way of defeating judicial estoppel by establishing an inadvertent failure to satisfy a statutory disclosure duty in a bankruptcy case. . . .  Motive and subjective intent are closely-related concepts and are often intertwined in the law.") (citations omitted).

[7] Defendants cite to *Allen* in support of their contention that Plaintiffs had a motivation to conceal their claim [Dkt. 23 at 9-10].  In *Allen*, the plaintiffs failed to disclose a personal injury claim they were aware of at the time the bankruptcy proceeding was filed, then argued that no motivation to conceal the claim could "be inferred because: (1) the bankruptcy proceeding was closed without a discharge, allowing creditors to continue to pursue their claims, and (2) the debtors would not 'intentionally attempt to defraud creditors of such a relatively small sum of money.'"  813 F.3d at 574.

at 6].  Defendant rejoins that because "Plaintiffs used the amounts owed under the note secured by the deed of trust to secure a Chapter 7 discharge in their bankruptcy to the detriment of other creditors," and stated they "intended to reaffirm the debt[,] [t]hey should not now be allowed to challenge those same amounts owed, or the validity of the lien that secured the amounts" [Dkt. 27 at 2-3].

Plaintiffs' position that there is no longer a debt owed is inconsistent with Plaintiff's reaffirmation of the debt in connection with the bankruptcy proceedings and appears to be an attempt to avoid Plaintiffs' prior sworn statements to the bankruptcy court.  Indeed, in both bankruptcy petitions, Plaintiffs stated, in relation to the Loan held by Superior Funding, FH Partners, LLC, that they intended that the "debt will be reaffirmed pursuant to 11 U.S.C. § 524(c)" [Dkts. 23-7 at 50; 23-11 at 46].  Moreover, in Plaintiffs' Schedule D – Creditors Holding Secured Claims, Plaintiffs list Superior Funding; FH Partners, LLC as a secured creditor and further stated that the debt was in the amount of $33,465.00 and secured by their homestead [Dkt. 24-11 at 17].  Certainly, Plaintiffs never challenged the validity of this debt in the bankruptcy proceedings.  And the bankruptcy court accepted Plaintiff's position that it owed a debt to Superior Funding, FH Partners, LLC.  *See Capistrano v. Bank of New York Mellon*, No. 4:16-CV-871-ALM-KPJ, 2017 WL 1758052, at *4 (E.D. Tex. Apr. 3, 2017) (finding the first element of judicial estoppel satisfied where "Plaintiff's admission in the Agreed Order Modifying Stay [] that [Defendant] holds a valid promissory note and first priority deed of trust, are clearly inconsistent with his current position that [Defendant] has no interest in the deed of trust, and the assignment is invalid"), *report and recommendation adopted*, No. 4:16-CV-00871, 2017 WL 1739961 (E.D. Tex. May 3, 2017); *Garza v. DHI Mortg. Co.*, No. 4:19-CV-00780-SDJ-CAN, 2020 WL 7700620, at *12 (E.D. Tex. Nov. 12, 2020) (finding the plaintiff was judicially estopped from bringing claims related to

allegations of forgery and invalidity of a loan modification where the plaintiff "never challenged the validity of the loan modification in her prior bankruptcy proceedings"), *report and recommendation adopted*, No. 4:19-CV-780, 2020 WL 7698832 (E.D. Tex. Dec. 28, 2020). Further illustrative of this point, Plaintiffs would have been aware or had knowledge at the time of the bankruptcy filings that construction of the pool was not completed per the contract, and that the Loan amount should be lowered to zero.  Again, the pool was built in 2006; in November 2007, after Plaintiffs knew of this fact, Plaintiffs filed for bankruptcy.  Plaintiff cannot now disclaim the debt and/or allege the debt is zero to try and void the lien.  The doctrine of judicial estoppel acts to bar any breach of contract claim on this basis.

Thus, Plaintiff's breach of contract claim, save and except Plaintiff's claims related to the foreclosure proceedings themselves (i.e., regarding provision of notices) are barred by judicial estoppel.  As the Court found in connection with the issue of standing, any claims related to the 2019 foreclosure sale could not have been asserted at the time of the bankruptcies and should proceed to be considered on the merits.

### *Breach of Contract Claim*

Even assuming *arguendo* that judicial estoppel was inapplicable, Defendant moves for dismissal of Plaintiff's breach of contract claim on other grounds, arguing that Plaintiffs, as a matter of law, cannot meet all the essential elements for a breach of contract claim [Dkt. 23 at 16].  To succeed on a breach of contract claim under Texas law, Plaintiffs must show: "(1) the existence of a valid contract; (2) performance or tendered performance by [Plaintiffs]; (3) breach of contract by [Defendant]; and (4) damages sustained by [Plaintiffs] as a result of the breach." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).  Defendant further contends that Plaintiffs' breach of contract claim fails because Defendant "established the validity of the

lien in question and provided evidence that the contractually required notices were served" [Dkt. 23 at 16].  The Court addresses *infra* Plaintiffs' arguments related to the Texas Constitution and provision of notices.

As stated above, Plaintiffs now premise their breach of contract claim on Defendant's alleged breach of the partial lien clause in the Construction Contract [Dkt. 25 at 6].  The Court understands Plaintiffs to argue that because the pool is unfinished, no lien exists whatsoever, and Plaintiffs do not owe Defendant anything for the funds advanced under the Loan [Dkt. 23-5 at 3]. Plaintiffs proffer no authority whatsoever in support of interpreting the partial lien provision in this manner.   "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted); *Sanders v. Christwood, L.L.C.*, No. CV 17-9733, 2021 WL 40190, at *5 (E.D. La. Jan. 5, 2021) ("Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment.").  The Court has also been unable to locate any authority in its own research that a failure to complete the improvements by the contractor entirely defeats the indebtedness created by the Loan.[8][9]  Further, such position is inconsistent with Plaintiff's reaffirmation of the debt in connection with the bankruptcy proceedings.  As well, the relevant documents further state the

---

[8]Plaintiffs also cursorily assert Defendant breached the contact because it "demanded sums not owed under the contract" and "pursued a remedy to which it was not entitled" [Dkt. 25 at 6].  It is unclear precisely what Plaintiffs are arguing, other than the argument considered by the Court as to the partial lien provision.  To the extent Plaintiff alleges Defendant was precluded from accelerating the Loan, the Deed of Trust contains a power of sale clause: "If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law" [Dkt. 23-3 at 10].

[9] Plaintiffs assert, without authority, that the interpretation of a contract creates a fact issue.  Plaintiffs are mistaken. "Contract interpretation is a question of law[.]"  *Merritt Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143, 154 (5th Cir. 2017).

Lender "shall not be responsible for the completion of the Improvements and shall not in any manner be considered as a guarantor or surety of performance by Contractor [Dkt. 23-5 at 3].[10] The Court finds Plaintiffs have failed to proffer evidence to raise a genuine issue of material fact as to their breach of contract claim.  Therefore, Defendant is entitled to summary judgment on such claim.

### *The Loan and the Texas Constitution*

Defendant next argues that the Loan did not violate the Texas Constitution and is therefore enforceable [Dkt. 23 at 12-14].  More specifically, Plaintiffs' Second Amended Complaint advances that the Property constitutes their homestead and as such is exempt from foreclosure. Defendant, by and through its Motion for Summary Judgment, contends such position is unsupportable as "§ 50(a)(5)(D) [of the Texas Constitution] is inapplicable in that Plaintiffs obtained the loan so that they could finance the building of a new swimming pool, and such home improvement loans are specifically exempted under the first portion of [§] 50(a)(5) of Article XVI of the Texas Constitution" [Dkt. 23 at 13].  And further, Defendant argues that the Construction Contract complies with the Texas Constitution for new construction as it is in writing [Dkt. 23 at 14].  Plaintiffs counter that Defendant is mistaken, and the Construction Contract must be executed in compliance with § 50(a)(5)(D) because it contains the phrase "Repair or Renovate Existing Improvements" [Dkt. 25 at 8], and that such compliance did not occur because the Construction Contract was executed at Plaintiffs' home [Dkt. 25 at 10].  Plaintiffs therefore ask the Court to "disallow the affixation of Defendant's claim to the [Plaintiffs'] home" [Dkt. 25 at 10].

Section 50(a) of the Texas Constitution states in relevant part:

(a) The homestead of a family, or of a single adult person, shall be, and is hereby

---

[10] Also, Plaintiffs have not pleaded, let alone proven, any actual damages; in fact, the Plaintiffs' only reference to actual damages states, "Defendant's actions, . . . as described above, have caused Plaintiffs damages which exceed the minimum jurisdictional limits of this court . . ." [Dkt. 19 at 4].

protected from forced sale, for the payment of all debts except for:

\*\*\*

(5) work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon if:

\*\*\*

(A) the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead;

\*\*\*

(D) the contract for the work and material is executed by the owner and the owner's spouse only at the office of a third-party lender making an extension of credit for the work and material, an attorney at law, or a title company[.]

TEX. CONST. art. XVI, § 50(a)(5).  As Defendant points out, the Texas Supreme Court in *Spradlin v. Jim Walter Homes, Inc.* held that subsections A through D apply only to "work and material used to repair or renovate *existing* improvements[.]"  34 S.W.3d 578, 581 (Tex. 2000) (emphasis added).  Plaintiff's swimming pool constituted a new improvement.  Therefore, the only relevant requirement for a lien that secures work and material used in constructing "new improvements" is that it be in writing.  *See id.* at 581.  Plaintiffs' assertion that the Construction Contract contemplates not a new pool, but an existing improvement because it contains the language "Repair or Renovate Existing Improvements" is unavailing [Dkt. 25 at 8].  *Denmon v. Atlas Leasing, L.L.C.*, 285 S.W.3d 591, 595 (Tex. App.—Dallas 2009, no pet. h.) ("[T]he Texas Constitution provides that a marital homestead is 'protected from forced sale for the payment of all debts except for ... work and material used in constructing new improvements thereon if ... the work and material are contracted for in writing, with the consent of both spouses.'") (citing TEX. CONST. art. XVI, § 50(a)(5)(A)).

To that end, Defendant is correct that the constitutional protections "apply to the facts of the situation, not the title of the document" [Dkt. 27 at 3].  As the Northern District of Texas recently stated, "the interpretation of an unambiguous contract is a question of law for the court to

decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Aperia Sols., Inc. v. OLB Grp., Inc.*, No. 3:18-CV-03276-X, 2020 WL 4431945, at *4 (N.D. Tex. July 30, 2020) (quoting *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004)). "Texas rules of contract interpretation require courts to look to the four corners of a contract and language is only ambiguous if both parties' interpretations are reasonable." *Id.* (citing *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743-44 (Tex. 2020)).

Here, Plaintiffs' asserted interpretation of the Construction Contract is not reasonable.  Nor do Plaintiffs proffer any authority in support of such an interpretation.  While the phrase "Repair or Renovate Existing Improvements" appears in the body of the Construction Contract, the substance and the circumstances surrounding its execution establish that the Construction Contract was intended for new construction [Dkt. 23-5].  Indeed, Plaintiff Sharon Valdes even concedes in her affidavit that she and her husband "contracted to have a pool *built* in [their] backyard," not renovated or repaired [Dkt. 25-1 at 2] (emphasis added).  Thus, the Construction Contract is not violative of the Texas Constitution and is enforceable.  *See Cavazos v. Munoz*, 305 B.R. 661, 678 (S.D. Tex. 2004) ("If the work and material were for new construction, for a constitutional lien to arise thereon, the only constitutional requirement is that the contract be in writing."); *see also In re Santoyo*, 540 B.R. 284, 290 n.2 (Bankr. S.D. Tex. 2015) ("Because the Contract was for the construction of a new home, the [Plaintiffs] are not afforded the protection of Section 50(a)(5)(C).").

Plaintiffs further contest that the Construction Contract violates the Texas Constitution as it was not signed in the appropriate place under § 50(a)(5)(D) [Dkt. 25 at 10].  However, Plaintiffs have previously sworn that the Construction Contract was signed "at the office of a third-party lender making an extension of credit for the work and material, an attorney at law, or a title

company" [Dkt. 23-3 at 13].  Indeed, Plaintiffs' signatures evince this fact [Dkt. 23-3 at 13] ("This Contract was executed by Borrower and Borrower's spouse, if any, at the office of a third-party lender asking an extension of credit for the work and materials, an attorney at law, or a title company.").[11]  Moreover, as the *Spradlin* Court made clear, and as discussed *supra*, the only requirement for liens securing work and material used in constructing new improvements is that those liens be in writing—a requirement certainly satisfied by both the Deed of Trust and the Construction Contract in the instant case [Dkts. 23-3; 23-5].  *Cavazos*, 305 B.R. at 680 (Finding no requirement that a construction contract for new improvements be signed in a third-party lender's office.  Rather, "[a] contractor who contracts with a property owner for new improvements must contract for same in writing.  Further, the contract must set forth the terms of the agreement, be signed by the owner and spouse, if married, before the work commences, and be recorded.") (internal citations omitted).[12]

In addition to the aforementioned, in connection with the execution of the Construction Contract, Plaintiffs specifically agreed:

---

[11] While Plaintiff Sharon Valdes's sworn affidavit states that she "executed the contract in [their] home," the Court finds such self-serving affidavit unavailing.  In the Fifth Circuit, courts do not allow a party to defeat a motion for summary judgment by using a sworn statement that impeaches, without explanation, sworn testimony.  *S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 495 (5th Cir. 1996).  A party cannot create a genuine issue of material fact merely by contradicting his or her own prior statement.  *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) ("[A] party cannot create a genuine issue of fact . . . simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.").  Various courts have held that a borrower's sworn statements at closing, *i.e.*, the signed Receipt, are conclusive on issues of compliance with the Constitution's home equity provisions, regardless of later allegations that the statements were false.  *See, e.g.*, *Summers v. PennyMac Corp.*, No. 3:12–CV–01235–L, 2012 WL 5944943, at *9 (N.D. Tex. Nov. 28, 2012); *Erickson v. Wells Fargo Bank, N.A.*, No. 09–11933, 2012 WL 4434740, at *7-8 (W.D. Tex. Sept. 24, 2012); *Sierra v. Ocwen Loan Servicing, LLC*, No. H-10-4984, 2012 WL 527940, at *4-5 (S.D. Tex. Feb. 16, 2012).

[12] Plaintiffs further contend in the Second Amended Complaint that the constitutional exception to homestead protection does not create or fix a mechanic's and materialman's lien on Plaintiffs' homestead.  And Plaintiffs also contend that there must still be compliance with the requirements found in section 53.254 of the Texas Property Code in order to have a valid lien on the homestead.  *See* TEX. PROP. CODE § 53.254.  The record reflects the Construction Contract complies with all requirements of this provision of the Texas Property Code.

**Legal Requirements.** Contractor and Owner do hereby warrant, certify and represent that Contractor and Owner have complied with all legal requirements regarding the execution of this Contract and construction of the Improvements (whether new or existing), including without limitation, Subchapter K of Chapter 53 of the Texas Property Code and Section 50(a)(5), Article XVI of the Texas Constitution.

[Dkt. 23-5 at 4]. For these reasons, the Court finds that the lien secured by the Deed of Trust is valid and enforceable under the Texas Constitution.

### Notices Sent under the Texas Property Code

Plaintiffs' live pleading insinuates Defendant further failed to comply with the Texas Property Code because Plaintiffs never received the Notice of Acceleration and Trustee's Sale in connection with the 2019 foreclosure sale [Dkt. 19 at 3]. Defendant, out of an abundance of caution, briefs its compliance with the notice requirements to the extent Plaintiffs' assertions regarding the notices could form a basis for their breach of contract claim [Dkt. 23 at 14-16]. Plaintiffs' Response wholly fails to address notices (and thus appears to also concede and not challenge that Defendant complied regarding the notice of the foreclosure sale). Notwithstanding, to the extent Plaintiffs intended to assert such a claim or still maintains such a claim, it fails.

Under Texas law, a borrower must be served with a notice of default before scheduling a foreclosure sale. TEX. PROP. CODE § 51.002(d). The Texas Property Code continues on to describe when service of a notice is complete:

Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

*Id.* § 51.002(e). "There is no requirement that [Plaintiffs] *receive* the notice." *Martins v. BAC Home Loans Serv., L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (emphasis added). Rather, the plain language of the Texas Property Code makes clear that service is complete upon deposit in the mail, not upon actual receipt; there is no requirement that a debtor physically receive the notice in order

for service to be valid and effective. *Martins*, 722 F.3d at 256. Furthermore, the debtor is entitled to notice of the foreclosure sale. TEX. PROP. CODE § 51.002(b)(3).

Under § 51.002(d), Plaintiffs are entitled to written service of a notice of default and must be given at least 20 days to cure the default before notice of sale can be given. TEX. PROP. CODE § 51.002(d). More specifically:

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b).

*Id.* Additionally, notice of sale via certified mail "must be given at least 21 days before the date of the sale[.]" *Id.* § 51.002(b)(3). Importantly, those time frames begin to run when the notice is deposited into the mail. *Id.* § 51.002(e) ("Service of a notice under this section by certified mail is complete when the notice is *deposited* in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address.") (emphasis added).

Here, it is undisputed that Defendant sent Plaintiffs, via certified mail and to the Property's address, a Notice of Default and Intent to Accelerate dated February 5, 2019 [Dkt. 23-5]. It is also undisputed that Defendant sent Plaintiffs, via certified mail and to the Property's address, a Notice of Acceleration and Trustee's Sale dated March 8, 2019 [Dkt. 23-7]—thirty-one days after the Notice of Default and Intent to Accelerate. And it is undisputed that the Trustee's Sale occurred on April 2, 2019 [Dkt. 23-8]—twenty-five days after the Notice of Acceleration and Trustee's Sale. There is no discernable basis for a claim related to the notices.

### *Declaratory Relief*

Plaintiffs also seek a declaratory judgment to "quiet title of the real property in their name and to require that the Loan and Deed of Trust be declared as null and void and without any further

effect" [Dkt. 19 at 4].  Plaintiffs elaborate that, pursuant to the Texas Civil Practice and Remedies Code,

> Plaintiffs seek a determination related to (i) the validity of the purported lien which is claimed by [Defendant;] (ii) the ability of Defendant[] to foreclose the alleged mortgage lien against the Plaintiffs homestead real property – especially when such alleged defaults were caused by Defendant's predecessors in title and their representatives[;] (iii) whether [Defendant] is a holder in due course of the Note and Deed of Trust[;] and (iv) whether the Note has failed for lack of consideration.

[Dkt. 19 at 4-5].  Defendant argues, among other reasons, that Plaintiffs are not entitled to declaratory relief because, as with the breach of contract claim, the "lien foreclosed by Defendant was valid, and properly assigned to [Defendant]" [Dkt. 23 at 18].  Further, the Property was purchased at foreclosure sale after default by Plaintiffs, and thus Plaintiffs have lost their interest in the Property [Dkt. 23 at 18].  "Where all the substantive, underlying claims are subject to dismissal, a claim for declaratory relief cannot survive." *Wallace v. U.S. Bank, N.A.*, No. 4:17-CV-437, 2018 WL 1224508, at *2 (E.D. Tex. Mar. 9, 2018) (citing *Walls v. JPMorgan Chase Bank, N.A.*, No. 4:13-CV-402, 2013 WL 5782999, at *4 (E.D. Tex. Oct. 25, 2013)).  Because Plaintiffs' underlying claims fail, Plaintiffs' request for declaratory relief should be dismissed.  *See Maples v. Barrett Daffin Frappier Turner & Engel, LLP*, No. 4:18-CV-875-ALM-CAN, 2019 WL 6333989, at *11 (E.D. Tex. Oct. 31, 2019), *report and recommendation adopted*, No. 4:18-CV-875, 2019 WL 6311022 (E.D. Tex. Nov. 25, 2019).[13] [14]

---

[13] Under the section titled "Declaratory Judgment" in their live pleading, Plaintiffs state they "seek to quiet title of the real property" and thus request a declaratory judgment [Dkt. 19 at 4-5].  To the extent Plaintiffs intended to assert a separate claim for quiet title, it fails.  Like Plaintiffs' other claims, Plaintiffs fail to show there is a genuine issue of material fact; such claim is properly dismissed.

[14] Plaintiffs seek attorney's fees in their live pleading [Dkt. 19 at 4].  Because there is no claim that survives summary judgment, Plaintiffs assert no discernable, meritorious basis for an award of fees.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant's Motion for Summary Judgment

[Dkt. 23] is **GRANTED** and that Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED this 26th day of January, 2021.**


_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE